CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUN 22 2018

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| KAY FRANCES REYNOLDS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7:17CV00399 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | By: Hon. Glen E. Conrad |
| Commissioner of Social Security, | ) | Senior United States District Judge |
| | ) | |
| Defendant. | ) | |

Plaintiff has filed this action challenging the final decision of the Commissioner of Social Security denying plaintiff's claims for disability insurance benefits and supplemental security income benefits under the Social Security Act, as amended, 42 U.S.C. §§ 416(i) and 423, and 42 U.S.C. § 1381 et seq., respectively. Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). This court's review is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that plaintiff failed to meet the requirements for entitlement to benefits under the Act. If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966). Stated briefly, substantial evidence has been defined as such relevant evidence, considering the record as a whole, as might be found adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 401 (1971).

The plaintiff, Kay Frances Reynolds, was born on March 20, 1961. She eventually graduated from high school and also completed two years of college. (Tr. 315). Ms. Reynolds has been employed as a twister, hooker, sales attendant, cashier, sandwich maker, and fast food worker. She was still working at Taco Bell on a part-time basis at the time of the administrative hearing on April 27, 2016. (Tr. 51). On October 3, 2013, Ms. Reynolds filed applications for disability

insurance benefits and supplemental security income benefits. In filing her current claims, Ms. Reynolds alleged that she became disabled for all forms of substantial gainful employment on August 15, 2008, due to bipolar disorder, post-traumatic stress disorder, attention-deficit hyperactivity disorder, obsessive-compulsive disorder, degenerative arthritis in her shoulders and lower back, bone spurs, left knee pain, and kidney stones.[1] (Tr. 281, 314). Ms. Reynolds now maintains that she has remained disabled to the present time. With respect to her application for disability insurance benefits, the record reveals that Ms. Reynolds met the insured status requirements of the Act through the third quarter of 2015, but not thereafter. See generally, 42 U.S.C. §§ 416(i) and 423(a). Consequently, plaintiff is entitled to a period of disability and disability insurance benefits only if she has established that she became disabled for all forms of substantial gainful employment on or before September 30, 2015.

Ms. Reynolds' applications were denied upon initial consideration and reconsideration. She then requested and received a de novo hearing and review before an Administrative Law Judge. In an opinion dated August 19, 2016, the Law Judge also determined, after applying the five-step sequential evaluation process, that Ms. Reynolds is not disabled. See 20 C.F.R. §§ 404.1520 and 416.920.[2] Based on the earnings records from her job at Taco Bell, the Law Judge first ruled that Ms. Reynolds engaged in substantial gainful activity during the third and fourth quarters of 2015, and that the disability inquiry therefore ended at the first step of the sequential evaluation process

---

[1] Plaintiff filed prior applications for disability insurance benefits and supplemental security income benefits, which were denied by the state agency on February 24, 2010. She did not appeal the decisions, making them final determinations. The Law Judge found no basis for reopening the prior determinations, and counsel for plaintiff did not ask her to do so. (Tr. 51). Accordingly, the Law Judge considered plaintiff's request for concurrent benefits beginning on February 25, 2010, the day after the previous determinations. (Tr. 15).

[2] The process requires the Law Judge to consider, in sequence, whether a claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to her past relevant work; and (5) if not, whether she can perform other work in the national economy. 20 C.F.R. §§ 404.1520 and 416.920. If a decision can be reached at any step in the sequential evaluation process, further evaluation is unnecessary. Id.

with respect to that period. (Tr. 17). However, the Law Judge found that there had been continuous 12-month periods during which the claimant did not engage in substantial gainful activity. (Tr. 18). Accordingly, the Law Judge focused the remainder of her decision on such periods. The Law Judge found that Ms. Reynolds suffers from several severe impairments, including "cervical and lumbar degenerative disc disease, compression fracture at L1, obesity, bipolar affective disorder, post-traumatic stress disorder (PTSD), anxiety disorder, and a personality disorder," but that these impairments do not, either individually or in combination, meet or medically equal the requirements of a listed impairment. (Tr. 18-19). The Law Judge then assessed Ms. Reynolds' residual functional capacity as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform less than a full range of light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except: occasional stairs and ramps; no ladders, ropes or scaffolds; occasional balancing, stooping, kneeling, crouching and no crawling; moderate noise environment; and occasional exposure to extreme cold, vibrations and workplace hazards such as dangerous moving machinery but no exposure to unprotected heights.[3] She can perform unskilled work at an SVP 1 or 2 where the pace of productivity is not dictated external outside her control, such as conveyor belts.[4]

(Tr. 20). Given such a residual functional capacity, and after considering testimony from a vocational expert, the Law Judge determined that Ms. Reynolds remains capable of performing her past relevant work as a fast food worker. In the alternative, the Law Judge found that if even if Ms. Reynolds is disabled for past relevant work, she retains the capacity to perform other work roles

---

[3] "Light work," as defined in the regulations, "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weight up to 10 pounds." 20 C.F.R. §§ 404.1567(b) and 416.967(b). "[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time." SSR 83-10, 1983 SSR LEXIS 30, at *14 (Jan. 1, 1983).

[4] "SVP" is short for "specific vocational preparation" and "refers to the time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." Vigil v. Colvin, 805 F.3d 1199, 1200 n.2 (10th Cir. 215) (internal quotation marks omitted). "A job at SVP one requires a short demonstration only and at SVP two requires anything beyond a short demonstration up to and including 1 month." Id. (alteration and internal quotation marks omitted).

3

existing in significant number in the national economy. Accordingly, the Law Judge concluded that Ms. Reynolds is not disabled, and that she is not entitled to benefits under either federal program. See generally 20 C.F.R. §§ 404.1520(f)-(g) and 416.920(f)-(g). The Law Judge's opinion was adopted as the final decision of the Commissioner by the Social Security Administration's Appeals Council. Having exhausted all available administrative remedies, Ms. Reynolds has now appealed to this court.

While plaintiff may be disabled for certain forms of employment, the crucial factual determination is whether plaintiff is disabled for all forms of substantial gainful employment. See 42 U.S.C. §§ 423(d)(2) and 1382c(a). There are four elements of proof which must be considered in making such an analysis. These elements are summarized as follows: (1) objective medical facts and clinical findings; (2) the opinions and conclusions of treating physicians; (3) subjective evidence of physical manifestations of impairments, as described through a claimant's testimony; and (4) the claimant's education, vocational history, residual skills, and age. Vitek v. Finch, 438 F.2d 1157, 1159-60 (4th Cir. 1971); Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

After a review of the record in this case, the court is constrained to conclude that the Commissioner's final decision is supported by substantial evidence. The Law Judge's opinion reflects a thorough evaluation of Ms. Reynolds' medical problems and the extent to which they affect her ability to work. Although Ms. Reynolds suffers from a combination of physical and emotional impairments, substantial evidence supports the Law Judge's determination that she retains the residual functional capacity to perform a limited range of light, unskilled work.

The record reveals that Ms. Reynolds was incarcerated from November 2011 through August 2013, after being convicted of statutory burglary and grand larceny. (Tr. 321, 441). Records from the Virginia Department of Corrections contain references to an abnormal affect, an

impaired mood, and musculoskeletal pain for which plaintiff received medications. (Tr. 484-663). In May of 2011, correctional officers found twenty-five carbamazapine tablets, which plaintiff was supposed to be taking twice a day, in plaintiff's cell. (Tr. 663). Ms. Reynolds was also found to be hoarding Ibuprofen and Benadryl. (Tr. 663). The prison physician recommended that plaintiff stop receiving medications at that time. (Tr. 662).

In September of 2013, following her release from incarceration, Ms. Reynolds reestablished treatment at Bassett Family Practice. (Tr. 437-38). She complained of feeling depressed and asked to be tested for obsessive-compulsive disorder (OCD) and attention-deficit hyperactivity disorder (ADHD). (Tr. 437). Dr. Kwamba Nkembe noted that Ms. Reynolds was hyperactive during the examination and had trouble staying on track, but that she was alert and oriented with normal speech form and content. He diagnosed plaintiff with bipolar affective disorder and OCD. (Tr. 437). Dr. Nkembe advised her to continue taking Tegretol (carbamazapine) and referred her to a counselor. (Tr. 438). He also wrote a "to whom it may concern letter" indicating that Ms. Reynolds was incapable of working. (Tr. 434).

On September 17, 2013, Ms. Reynolds met with Erin Jenkins, LPC for an initial behavioral health evaluation. Ms. Reynolds reported that she had been forced to stop taking college classes as a result of being incarcerated, but that she had since re-enrolled to work on another degree. (Tr. 441). During the evaluation, plaintiff's thought process appeared to be scattered and her speech was pressured. (Tr. 442). However, Ms. Jenkins noted that she was well-groomed with normal eye contact, a reactive affect, an engaged and cooperative attitude, normal thought content, and fair insight and judgment. (Tr. 442).

Ms. Reynolds returned to Dr. Nkembe on October 2, 2013 with complaints of neck pain and muscle spasms in her back. (Tr. 443). On examination, plaintiff exhibited normal range of

motion in her spine and her straight leg raise test was normal. Dr. Nkembe prescribed a 15-day supply of Lortab for pain and a muscle relaxant for spasms. (Tr. 443).

During a follow-up appointment with Ms. Jenkins on October 22, 2013, Ms. Reynolds reported ongoing conflicts with her father and brother, but noted that she had been going to church and speaking with her pastor and his wife. (Tr. 452). Although plaintiff continued to have pressured speech, she was well groomed, exhibited a logical, goal-directed thought process, was oriented in all four spheres, and demonstrated fair insight and judgment. (Tr. 452).

Plaintiff's symptoms remained relatively unchanged through November and December of 2013. (Tr. 454, 456). On December 12, 2013, Ms. Jenkins met with Megan Ellis, LPC at Bassett Family Practice. (Tr. 456). Although she complained of ongoing issues with her father, Ms. Reynolds reported that she had developed a good relationship with her pastor, that she was attending bible study and singing in the church choir, and that she had completed the fall semester at school.

Plaintiff's medical records from the first half of 2014 reflect continued improvement. In January of 2014, Ms. Reynolds reported that she was taking four classes at the local community college and that she was successfully managing school. (Tr. 458). When seen in February 2014, Ms. Jenkins advised that she was doing well in her classes, exercising more often, and going to church regularly. (Tr. 462). During a subsequent appointment in March 2014, Ms. Reynolds reported that she had been going to school regularly, cleaning out her house, and participating in church activities. (Tr. 464). Ms. Ellis observed that plaintiff was pleasant, engaged, and well-groomed, and that she spoke without pressure. Additionally, her thought process was logical and goal-directed, and she exhibited fair insight and judgment. (Tr. 464). Ms. Ellis noted that plaintiff was "coping and functioning well" and that she was "trying to improve her life through school, church, and part-time employment." (Tr. 465). In April 2014, plaintiff had a normal back

examination. (Tr. 466). She was also found to be "doing well and without complaints" during a follow-up evaluation of her bipolar disorder. (Tr. 468).

Ms. Reynolds continued to improve throughout the summer of 2014. In May, she advised Ms. Ellis that she was walking five days a week and had lost four pounds. Although plaintiff reported experiencing a "little anxiety" in deciding whether to attend summer classes, her mood, affect, speech, attitude, and thought process were within normal limits. (Tr. 666). In June of 2014, Ms. Ellis noted that plaintiff was "doing well and without complaints." (Tr. 668). A depression screen yielded a total score of 4, which was indicative of minimal depression. Ms. Reynolds returned to Dr. Nkembe in July of 2014 for a follow-up appointment. (Tr. 672-73). She had no acute complaints and reported that Buspar had helped with her anxiety. On examination, Ms. Reynolds' back, gait, and extremities were normal, as were her mood and speech. Although Ms. Reynolds appeared "slightly more depressed" in July after experiencing some financial problems, she was "doing well" and had no complaints in September, at which time she was working twenty hours per week with a church afterschool program. (Tr. 670, 676).

In October of 2014, Ms. Reynolds experienced an exacerbation of her back problems. She presented to Dr. Nkembe for a "follow up to disability claim" and to obtain a disability form. (Tr. 679). On physical examination, plaintiff had diminished range of motion in her back, her straight leg raising test was positive, and she had moderate lumber tenderness, sacroiliac joint tenderness, and some lumbar spine spasms. (Tr. 679). At the conclusion of the appointment, Dr. Nkembe completed a medical source statement of plaintiff's physical ability to do work-related activities. (Tr. 480-483). Dr. Nkembe opined that plaintiff can occasionally lift and/or carry less than ten pounds; stand and/or walk for less than two hours in an eight-hour workday; sit less than two hours

7

in an eight-hour workday; engage in limited pushing and/or pulling with her upper extremities; never kneel or crouch; and occasionally climb, crouch, crawl, and stoop. (Tr. 480-481).

Ms. Reynolds returned to Bassett Family Practice on December 30, 2014. She reported a one-week history of flank pain after falling in her home. (Tr. 681). She had been using medication prescribed in May of 2014 to treat her symptoms. The physical examination revealed no signs of acute distress; her extremities and gait were normal. (Tr. 682). Plaintiff declined to report to the emergency room that night for imaging, but noted that she "'may have to do it so [she] can get some pain medicines.'" (Tr. 682). On January 4, 2015, Ms. Reynolds presented to the emergency room with back pain. (Tr. 693). On physical examination, plaintiff had midline back tenderness but normal musculoskeletal range of motion, normal strength, and intact sensation. (Tr. 694). Thoracic spine x-rays revealed a mild compression fracture of unknown age. (Tr. 694-96). Plaintiff was prescribed pain medication and advised to consult with a neurosurgeon. (Tr. 696).

On January 29, 2015, Ms. Reynolds underwent a neurosurgery consultation at Carilion Clinic with Jessica Conley, FNP. (Tr. 725-32). Plaintiff reported experiencing ongoing back pain since her December 2014 fall. (Tr. 726). The physical examination revealed full range of motion in her neck and extremities without pain, clubbing, cyanosis, or edema; intact sensation; and full strength in her extremities. (Tr. 728). Ms. Reynolds also had a steady gait with no focal deficits. (Tr. 728-29). Ms. Conley ordered a back brace and agreed that plaintiff could continue on her current medication regimen. (Tr. 729). She also arranged for upright imaging of plaintiff's lumbar spine. The imaging revealed an "anterior compression deformity of L1 with nearly 50% vertebral body height loss" and "[d]isc height loss" at the T12-L1 level. (Tr. 733).

Ms. Reynolds returned to Dr. Nkembe on April 28, 2015. (Tr. 686). She requested a refill of her pain medication, but asked if her prescription for Flexeril could be placed on hold because she

8

already had six bottles at home and used it only as needed. Dr. Nkembe administered a depression screening that yielded a score of 5, which was indicative of mild depression. On physical examination, plaintiff had reduced range of motion in her spine and mild lumbar tenderness. However, her gait and extremities were normal. (Tr. 686). During subsequent follow-up appointments in October 2015 and March 2016, Ms. Reynolds had "no acute complaints." (Tr. 723, 736). Dr. Nkembe's examination notes indicate that she was "feeling fine" and that her back pain was "stable on [the] current regimen." (Tr. 736).

At the administrative hearing held in April 2016, Ms. Reynolds testified that she was working part-time as a cashier at Taco Bell. (Tr. 54). Her duties included operating the cash register, taking orders, making tea, wiping down tables, sweeping, mopping, cleaning the bathrooms, and stocking the condiments. (Tr. 54). Plaintiff testified that her supervisor allowed her to take short breaks to rest if she experienced any pain. (Tr. 55). She estimated that she would take one or two breaks lasting approximately ten or fifteen minutes depending on how she felt on a particular day. (Tr. 55). Ms. Reynolds acknowledged that her job at Taco Bell helped her "tremendously," and that her mental impairments did not limit her ability to work. (Tr. 63).

After considering all of the evidence of record, the Law Judge determined that Ms. Reynolds' physical impairments are not so severe as to prevent performance of lighter forms of work activity. In making this determination, the Law Judge found that Ms. Reynolds' allegations of disabling physical limitations are not entirely credible. The Law Judge noted that the clinical evaluations discussed above include "relatively benign findings" and reflect a "lack of significant treatment, like physical therapy, injection therapy, or surgery." (Tr. 23). The Law Judge also emphasized that plaintiff's allegations were inconsistent with her daily activities, which included working part-time and attending college and church.

The Law Judge also declined to accept Dr. Nkembe's opinions regarding plaintiff's physical ability to work. The Law Judge found that the limitations noted by Dr. Nkembe were inconsistent with the record as a whole, including the relatively unremarkable findings on examination and the plaintiff's documented ability to attend school, work part-time, and participate in church activities. (Tr. 23). The Law Judge assigned greater weight to the opinions of Dr. Donald Williams, who reviewed the record at the request of the state agency. Dr. Williams noted that Ms. Reynolds' physical impairments "have not been severely functionally limiting over the years," and that she "has actually maintained good function." (Tr. 119). He opined that plaintiff is capable of lifting ten pounds frequently and twenty pounds occasionally, standing and/or walking six hours in an eight-hour workday, and sitting for six hours in an eight-hour workday. (Tr. 120). The Law Judge found that Dr. Williams' assessment was more consistent with the record as a whole, including the physical findings on examination, the conservative nature of the treatment provided, and the plaintiff's activities. (Tr. 23).

The Law Judge also concluded that Ms. Reynolds' mental impairments do not render her disabled for all forms of substantial gainful employment or otherwise contribute to an overall disability. In evaluating her mental impairments under step three of the sequential process, the Law Judge determined that Ms. Reynolds has "moderate difficulties with pace and mild difficulties with concentration and persistence." (Tr. 19). The Law Judge noted that while Ms. Reynolds appears to have minor concentration and memory difficulties, "she drives, shops for food, reads, does crafts, plays solitaire, watches television, listens to music, takes online classes, and continues to work part-time, all of which requires some concentration, persistence, or pace." (Tr. 19). Nonetheless, "giving her the benefit of the doubt, and in consideration of her objective findings," the Law Judge found that plaintiff has moderate limitations with pace. (Tr. 19). The Law Judge

further found that, despite such limitations, Ms. Reynolds is capable of performing unskilled work at an SVP 1 or 2 where the pace of productivity is not dictated by an external source over which she has no control. (Tr. 20). In reaching this decision, the Law Judge relied, at least in part, on the opinion of Leslie Montgomery, Ph.D., who reviewed the record at the request of the state agency. Dr. Montgomery opined that despite certain moderate limitations in the category of "sustained concentration and persistence," plaintiff "is capable of at least simple routine work on a regular basis." (Tr. 136-37). The Law Judge found this conclusion to be consistent with the medical record as a whole, as well as the plaintiff's ability to attend college and work part-time. (Tr. 23).

The court believes that substantial evidence supports the Law Judge's reliance on the opinions of the state agency consultants, inasmuch as the court agrees that their opinions are consistent with the objective findings and other evidence in the record. Through her consideration of the state agency reports, the Law Judge was able to properly consider the synergistic effect of all of the plaintiff's physical and emotional problems. Stated differently, the court believes that, in this case, the state agency reports provide substantial evidence to support the Law Judge's finding that, despite her combination of physical and nonexertional limitations, plaintiff retains sufficient functional capacity to perform a limited range of light, unskilled work.

On appeal to this court, Ms. Reynolds, through counsel, makes four arguments in support of her motion for summary judgment. Plaintiff's first argument presents somewhat of a close question. As reflected above, the Law Judge specifically found that plaintiff's emotional problems result in moderate difficulties with pace and mild difficulties with concentration and persistence. (Tr. 19). Yet, in formulating her findings regarding plaintiff's residual functional capacity, the Law Judge did not specifically include such deficiencies. Nor did the Law Judge include limitations in concentration or persistence in the hypothetical questions propounded to the

11

vocational expert at the administrative hearing. Citing a variety of decisions, most notably that of the United States Court of Appeals for the Fourth Circuit in Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015), plaintiff argues that the Law Judge did not sufficiently accommodate her limitations in concentration, persistence, and pace by merely limiting her to unskilled work at an SVP 1 or 2 where the pace of productivity is not dictated by an external source over which she has no control. (Tr. 20). While this court has adopted such reasoning on multiple occasions, see, e.g., Sexton v. Colvin, 21 F. Supp. 3d 639, 642-43 (W.D. Va. 2014), the court does not believe that the evidence in Ms. Reynolds' case supports the application of this rule.

As Ms. Reynolds recognizes in her brief, Mascio does not stand for the proposition that mild or moderate limitations in concentration, persistence, or pace always translate into a limitation in the residual functional capacity assessment. See, e.g., Richards v. Berryhill, No. 7:16CV00246, 2018 U.S. Dist. LEXIS 50535, at *11 (W.D. Va. Mar. 27, 2018). Rather, the decision underscores the Law Judge's duty to explain how her residual functional capacity findings adequately account for a claimant's work-related limitations. See Mascio, 780 F.3d at 638 ("Perhaps the ALJ can explain why Mascio's moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in Mascio's residual functional capacity. For example, the ALJ may find that the concentration, persistence, or pace limitation does not affect Mascio's ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert. But because the ALJ here gave no explanation, a remand is in order."). Moreover, "when medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations." Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011) (cited in

Mascio, 780 F.3d at 638); see also Sizemore v. Berryhill, 878 F.3d 72, 81 (4th Cir. 2017) (holding that remand was not required under Mascio where the opinions of two medical professionals "provided substantial support for the ALJ's finding that, despite Sizemore's overall moderate difficulties with concentration, persistence, or pace, he would nonetheless be able to stay on task while performing 'simple one, two-step tasks,' as long as he was 'working in low stress non-production jobs with no public contact'") (emphasis omitted).

In this case, the court concludes that the Law Judge's decision comports with Mascio. As indicated above, even after recognizing that Ms. Reynolds experiences certain moderate limitations in the area of "sustained concentration and persistence," Dr. Montgomery nonetheless opined that she remains capable of performing "at least simple routine work on a regular basis." (Tr. 122). The court believes that the Law Judge reasonably relied on Dr. Montgomery's assessment in concluding that, despite her difficulties with concentration, persistence, and pace, Ms. Reynolds retains the capacity to perform unskilled work for which the pace of productivity is not outside her control. The Law Judge specifically found that such restrictions sufficiently accommodate her periodic mood issues, anxiety, and hyperactivity, and that the record as a whole, "particularly the claimant's ability to attend college and work part-time," indicates that that she does not require greater limitations.[5] (Tr. 23). In short, the court is satisfied that the Law Judge provided an adequate explanation of how her residual functional capacity findings fully accounted for Ms. Reynolds' mental impairments and the limitations resulting therefrom, and that her assessment is supported by substantial evidence. Accordingly, remand is not required under Mascio.

Second, Ms. Reynolds argues that the Law Judge erred in failing to give significant weight

---

[5] The court notes that the Law Judge properly considered plaintiff's part-time employment as an indication of her functionality. See 20 C.F.R. §§ 404.1571 and 416.971 ("Even if the work you have done was not substantial gainful employment, it may show that you are able to do more work than you actually did.").

to the opinions of her treating physician, Dr. Nkembe. As indicated above, the Law Judge found that Dr. Nkembe's assessment of Ms. Reynolds' physical capacity to perform work-related activities was inconsistent with the record as a whole, including the objective findings on examination and the plaintiff's proven ability to work part-time and attend school. Having reviewed the record in its entirety, the court concludes that substantial evidence supports the Law Judge's decision to not give controlling weight to Dr. Nkembe's opinions. Although the opinions of a treating source are generally entitled to greater weight under the administrative regulations applicable to plaintiff's claims, see 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2), the court believes that, in the instant case, the Law Judge properly determined to give greater weight to other medical evidence, including the report from Dr. Williams. The Law Judge correctly observed that Dr. Williams' opinions regarding plaintiff's work-related limitations are supported by substantial evidence in the record, including the physical findings on examination, the lack of more aggressive treatment, and the plaintiff's daily activities. In short, the court believes that the Law Judge's decision to discount the opinions offered by Dr. Nkembe, and to rely instead on the opinions of the state agency physician, is well supported by the record.

Third, Ms. Reynolds argues that the Law Judge failed to conduct a proper function by function analysis in assessing her residual functional capacity. In particular, Ms. Reynolds contends that the Law Judge failed to make sufficient findings regarding her alleged need to lie down and rest during the day as a result of pain. It is clear from the Law Judge's decision, however, that the Law Judge considered all of Ms. Reynolds' claimed limitations, but found that such limitations were inconsistent with the clinical findings, the conservative nature of the treatment provided, and the evidence of her daily activities. Accordingly, the court believes that the Law Judge's treatment of Ms. Reynolds' claimed limitations is consistent with the protocol established in

Mascio and Monroe v. Colvin, 826 F.3d 176 (4th Cir. 2016), and that substantial evidence supports the Law Judge's evaluation of Ms. Reynolds' residual functional capacity.

Finally, relying on the Fourth Circuit's decision in Brown v. Commissioner, 873 F.3d 251 (4th Cir. 2017), Ms. Reynolds contends that the Law Judge's assessment of her testimony and subjective complaints is not supported by substantial evidence. While Ms. Reynolds testified at the administrative hearing that she experiences chronic pain, muscle spasms, fatigue, and difficulties with memory and concentration, the Law Judge found that the plaintiff's statements regarding the intensity and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. The Law Judge then provided specific reasons for her decision to not fully credit the plaintiff's statements regarding the severity of her symptoms. The Law Judge observed that "[d]espite her allegations of significant pain and mental instability, her findings have been relatively benign, and her retained functionality suggests her symptoms are not as severe as alleged." (Tr. 21). The Law Judge also noted that Ms. Reynolds' impairments have been treated with routine, conservative measures that have been generally successful in controlling her symptoms, and that her failure to use prescribed medications suggests that her symptoms are not as severe as alleged. (Tr. 21-22). Upon review of the record, the court is unable to discern any error in the Law Judge's credibility findings. Unlike Brown, the Law Judge carefully considered plaintiff's medical history along with her own allegations regarding the symptoms of her physical and mental impairments. The court agrees that the plaintiff's allegations of totally disabling symptoms are disproportionate to the clinical findings and inconsistent with the fact that conservative treatment measures, including medications, have effectively controlled her symptoms. Indeed, examination records from the period immediately preceding the administrative hearing indicate that the plaintiff was "feeling fine," that she had no acute complaints, and that her back pain

was stable on the current regimen. (Tr. 723, 736). Accordingly, the court is satisfied that substantial evidence supports the Law Judge's decision not to fully credit Ms. Reynolds' testimony.

In affirming the Commissioner's final decision, the court does not suggest that Ms. Reynolds is free of all pain, discomfort, and emotional dysfunction. Indeed, the medical record confirms that plaintiff suffers from impairments that can be expected to result in subjective limitations. However, it must again be noted that several medical specialists who have evaluated plaintiff's physical and emotional problems believe that she retains the capacity to perform regular work activity. It must be recognized that the inability to work without any subjective complaints does not of itself render a claimant disabled. See Craig, 76 F.3d at 592. It appears to the court that the Law Judge considered all of the medical evidence, as well as all of the subjective factors reasonably supported by the record, in adjudicating Ms. Reynolds' claims for benefits. Thus, the court concludes that all facets of the Commissioner's final decision are supported by substantial evidence.

As a general rule, the resolution of conflicts in the evidence is a matter within the province of the Commissioner, even if the court might resolve the conflicts differently. Richardson v. Perales, supra; Oppenheim v. Finch, 495 F.2d 396 (4th Cir. 1974). For the reasons stated, the court finds the Commissioner's resolution of the pertinent conflicts in the record in this case to be supported by substantial evidence. Accordingly, the final decision of the Commissioner must be affirmed. Laws v. Celebrezze, supra.

The Clerk is directed to send copies of this memorandum opinion to all counsel of record.

DATED: This 22d day of June, 2018.

*/s/ Glen Conrad*
Senior United States District Judge